

FILED

JUL 2 1 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

PECOS DIVISION

RICHARD WAYNE POWELL                    CASE NO: **P11 CV074**

vs.

UNITED STATES OF AMERICA; WARDEN, RCDC III;

US SECRETARY OF STATE; BUREAU OF PRISONS;

DEPARTMENT OF HOMELAND SECURITY; GEO GROUP


## §2241 PETITION FOR RELIEF


Richard Wayne Powell, a federal inmate sentenced under federal laws of the United States by a federal district court and remanded to the custody of the Federal Bureau of Prisons, hereby files this Petition for Relief pursuant to §2241 and seeks a judgment in his favor.

Powell submits that the Respondents have incorrectly designated him in the system, that he qualifies as a US national, and that there has been deprivations of due process, liberty interest and violations of his civil and constitutional rights.

Powell submits that this Court has jurisdiction pursuant to §2241 as per statute and precedent. INA§242(b)(5)(A); Gomez v. BICE, 315 F. Supp. 630; Rublee v. Fleming, 160 F.3d 213; Cervantes v. US, Case No:10-50248 (11/18/2010).

**JURISDICTION:**

Powell is in custody as required by §2241(d) and because the length of his sentence is being challenged, and he continues to have an interest in the outcome of the proceedings, this Court has jurisdiction and relief may be appropriate. US v. Verdin, 243 F.3d 1174.

Powell submits that this petition does not involve a removal order and that jurisdiction exists since it is a habeas corpus petition and judicial review and habeas corpus petitions are historically distinct legal concepts. INS v. St. Cyr, 523 U.S. 289.

This is a §2241 petition restricted to purely legal questions and Powell is asking the Court to make a legal determination as to whether or not he has presented facts to demonstrate that he is a national of the United States, a federal inmate, and thus eligible for all federal benefits enacted by statute.

Where specific allegations before the court show reason to believe that the Petitioner may, if the facts are fully developed be able to demonstrate that he is illegally confined, and is entitled to relief, it is the **duty** of the court to provide the necessary facilities and procedures for an adequate enquiry. Harris v. Nelson, 394 U.S. 286.

Habeas corpus jurisdiction and the duty to exercise it being present, it is the inescapable obligation of the courts to fashion the appropriate modes of procedure. This authority was expressly confirmed in the All Writs Act, 28 §1651; Price v. Johnston, 334

U.S. 266.

Powell is being denied certain rights and privileges as a national and federal inmate of the United States by the Respondents and pursuant to 8 §1503, "if any person who is within the United States claims a right or privilege as a national of the United States, and is denied such right of privilege by **any** department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute a claim against the head of such department or agency for a judgment declaring him to be a national of the United States."

Powell has been improperly classified as an illegal alien, Public Safety Factor -Deportable, ineligible for Early Release or Treatment Programs based on an illegal long-term detainer lodged by the Respondents. His rights and privileges as a federal inmate and national of the United States are being denied and as such he submits that this Court has jurisdiction to act in this matter.

Powell does not  seek for the Court to grant him a special status since the laws and statutes already clearly does so, and he is aware of the court's limitations to do so. He only seeks a judgment in his favor that will confirm his status as a federal inmate and national of the United States to benefit from the statutes not a decision to grant him rights he does not already possess. Miller v. Albright, 523 U.S. 420.

Powell applied for citizenship on 07/17/2003, and has thus satisfied the requirements set out in the INA statutes.

3

The Supreme Court concurred with the Appellate Court in Miller v. Christopher, 96 F.3d 1469, holding that a petitioner had standing to invoke the jurisdiction of the federal courts in such an instance. Powell submits that this Court has jurisdiction to enter a judgment declaring him to be a national of the United States and a federal inmate pursuant to existing statute and law, eligible for all federal benefits afforded other similarly situated federal inmates.

**LEGAL ARGUMENT:**

A United States national, as defined by the INA §101(a)(3); (22) as amended, 8 §1101(a)(3); (22), states in part that "to qualify as a U.S. national, a non-citizen resident of the United States must have applied for citizenship." Hughes v. Ashcroft, 255 F.3d 752.

A national is a person who, though not a citizen of the United States, owes permanent allegiance to the United States. To qualify as a national, an individual must, at a minimum, have demonstrated his or her allegiance to the United States by **applying for their citizenship.** INA §101(a)(3); (22).

The Supreme Court has identified the application for citizenship as a step in the process of acquiring full rights as a citizen. Johnson v. Eisentrager, 339 U.S. 763.

4

According to the Fourth Circuit Court of Appeals, "an application for citizenship is the **most compelling evidence** of permanent allegiance to the United States, short of citizenship itself." US v. Morin, 80 F.3d 124; US v. Carreon-Hernandez, 543 F.3d 638.

Since nationals are not removable from the United States, the classification and denial of benefits afforded such persons by the Respondents has and continues to cause grievous loss to Mr. Powell, subjecting him to harsher conditions of confinement and a lengthier sentence that that of other similarly situated federal inmates.

Powell presents for the court's consideration the following issues that may impact the court's decision:

1) Necessity to exhaust available administrative remedies

2) Whether there are due process protections attached to a liberty interest created by statute

3) Whether the Respondents' actions have led to denial of due process

4) What are the remedies that flow from a §2241 petition?

In an effort to clarify his position and claims, and in an effort to ensure that the facts of the case are not misconstrued, Powell asserts the following:

I am not an INS Detainee or Deportable Alien by definition according to BOP's Program Statement 5325.06 which refers to §571.10(6). I have been illegally segregated and denied federal programs and benefits based on capricious actions by the Respondents, having been sorted and classified based on only one factor on the list of eligibility requirements, a clear violation of the APA §706(2)(A). I have and continue to suffer grievous harm as a result of these actions.

The violations of my civil and constitutional rights and due process arise from an illegal long-term detainer lodged by ICE which the BOP claims gives them the authority to act and deny treatment and rehabilitation as authorized by statute. IADA, §2, Art.1. US v. Mauro, 436 U.S. 340.

The government now claims that there is no "actual detainer" in the true sense of the word and that BOP is acting on its own authority and not with ICE's expressed consent or authority.

Without these violations, Powell would be eligible for accelerated release from incarceration consistent with the federal benefits available to any other similarly situated federal inmate. Powell does not seek placement in any particular facility but simply application of all benefits that Congress intended for **all federal inmates, regardless of their citizenry.**

Powell's liberty interest was created by statute that is sufficiently mandatory in nature that was enacted by Congress, and the existence of a system that gives federal offenders such benefits.

**ISSUE I:**  Necessity to exhaust available administrative remedies.

**ARGUMENT:**

In Castro-Cortez, 239 F.3d 1037, the Court held that exhaustion was not a jurisdictional pre-requisite of a §2241 petition, and that failure to exhaust administrative remedies before the pursuit of habeas corpus relief "did not divest the court of jurisdiction." Brown v. Rison, 895 F.2d 533.

The exhaustion of administrative remedies is not required when the question of adequacy is for all practical purposes, identical with the merits of the lawsuit. Gibson v. Berryhill, 411 U.S. 564.

Additionally, exhaustion is not required if the plaintiff claims relief or compensation for a deprivation of civil rights that has already occurred, Whitner v. Davis, 410 F.2d (9th Cir. 1969), and it is beyond the authority of the administartive agency to declare the regulations as unconstitutional and therefore clearly inadequate. Houghton v. Schafer, 392 U.S. 639; Wilwording v. Swenson, 404 U.S. 249.

Powell contends that the available administrative remedies would leave standing the constitutional question and as such, exhaustion was not required. Public Utilities Commission v. US, 355 U.S. 534.

In addition, courts do not require exhaustion where it would be futile, as in this case, to comply with administrative remedies

that are available because it is clear that the claim would be rejected. <u>City Bank Farmers Trust v. Schnader</u>, 291 U.S. 24; <u>Montana National Bank v. Yellowstone County</u>, 276 U.S. 499.

Powell contends that since the Respondents have rejected many similar claims in the past, it was clear that his would be also rejected and thus clearly futile.

Powell further contends that the available remedies only applied to the rules and regulations implemented by the prison itself and that the violations occurred because of the policies and procedures of outside agencies under whose control he was not subjected to and therefore the prison system had no authority or jurisdiction to effect any change in such policies and procedures.

Powell is housed in a facility that does not have the ability or capability to offer the programs and benefits derived from the completion of such programs and there is no reference to them in the internal prison Program Statements. To insist that any thing or benefit that is not available to an inmate in the prison nor is contained in the policy manuals be "grieved" before seeking redress would unduly burden the available system and that was not the intent of the policy statements and procedure implementation.

With there being no other available remedy in place, Powell turns to this Court for assistance.

**ISSUE II:** Whether there are due process protections attached to a liberty interest created by statute?

**ARGUMENT:**

Any action that inevitably affects the duration of a sentence may violate a liberty interest created by statute. <u>Sandin</u>, 515 U.S. 487, 115 S.Ct. 2293. Powell contends that the statutes in question that were enacted by Congress contains the sufficiently mandatory discretion-limiting standards and criteria to guide the decision makers, with phrases such as "shall ensure" and "qualification eligibility criteria". <u>Olim v. Wakinekona</u>, 461 U.S. 238, 103 S.Ct. 1741; <u>Lewis v. Thigpen</u>, 767 F.2d 252; <u>Green v. McKastle</u>, 788 F.2d 1116 (5th Cir. 1986).

According to the Supreme Court, the **sole standard** for a created liberty interest is that an inmate must show that particularized standards or criteria guide the decision makers and that these standards are sufficiently mandatory in nature. <u>Hewitt</u>, 459 U.S. 470, 103 S.Ct. 870.

A Court's duty is to give effect, if possible, to every clause and word of a statute, <u>Montclair v. Ramsdell</u>, 107 U.S. 147, 2 S.Ct. 381 (1882), and the word "shall", when used in a statute is the word of command, and not subject to discretion. <u>Anderson v. Yungkau</u>, 329 U.S. 482, 67 S.Ct. 428; quoting <u>Escoe v. Zerbst</u>, 295 U.S. 490, 55 S.Ct. 818.

Throughout the statutes in question, Congress used the words "federal inmate" without ever specifying that there is a difference between a citizen and non-citizen federal inmate. When Congress acts and omits a reference to certain words or phrases, it is assumed that they acted intentionally. Russello v. US, 464 U.S. 16, 104 S.Ct. 296.

The only other factor that a court must consider is whether the prison's decision substantially affects the length or nature of a prisoner's confinement, e.g. affecting good time credits. Wolff, 418 U.S. 566, 94 S.Ct. 2975; Green v. Holtz, 442 U.S. 7, 99 S.Ct. 2104.

Hewitt, supra, also established that there can be the requisite impact upon a prisoner's incarceration for that person to have a liberty interest, **even though** the term of his confinement was not radically modified in length or nature.

However, Powell contends that the government created a substantive liberty interest in the expectation that a given offense would be met with only certain types of punishment, and that there has been greater than expected punishment inflicted, thereby violating his civil and constitutional rights. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1985).

Powell further contends that he possesses some right or justifiable expectation, rooted in law, that he will not be subjected to harsher conditions of confinement that that of other similarly situated federal inmates, **except** upon misbehavior or

upon the occurrence of other specified events. Montayne v. Haymes, 427 U.S. 236, 96 S.Ct. 2543.

In determining whether the change in conditions of imprisonment implicates a prisoner's retained liberty interest, the relevant question is whether the change constituted a sufficiently grievous loss so as to trigger the protection of due process. Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254; Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593.

Powell contends that by improperly classifying him as a deportable alien, **prior to any legal proceedings,** and without such having been proved, the BOP unlawfully imposed a change in his conditions of confinement which has led to harsher conditions of confinement and a longer sentence as compared to other similarly situated federal inmates.

The Supreme Court, applying the Meachum and Montayne principles in Vitek v. Jones, supra, held that placement in a facility that was not within the range of conditions of confinement to which a prison sentence subjects a prisoner, because it brought about consequences qualitatively different from the punishment characteristically suffered by any person convicted of a similar crime.

Powell submits that this Honorable Court must compare his treatment and conditions of incarceration with that of the federal prison population as a whole, and that the institutional norm is prison system as operated by the Bureau of Prisons and not privately.

All the rules and regulation of the BOP refer to federal inmates, **without distinction** as to citizen or non-citizen status, and any adverse change in conditions must equally affect all inmates as part of the daily operations of the BOP for there not to have been a violation of liberty interest created by statute.

This is obviously not the case herein since Powell has been singled out for disparate treatment, and that disparity is severe enough to place his liberty at stake. Such interest in early release and preparation for re-entry into society has been derived "solely from the existence of a system that permits criminal offenders such benefits." Green v. Holtz, supra.

Powell submits that any deprivations that are imposed in the course of the daily operations of the BOP are likely to be minimal when compared to the release from custody at issue herein. Hewitt, supra. The Supreme Court held in Pepper v. US, No:99-6822 (March 2011), that "by preventing an inmate from the **opportunity** to complete post-sentence rehabilitation, the BOP, prison authorities, and the government are depriving the inmate from the potential consideration of reduction in the term of confinement as authorized by § 3661 and according to § 3553(a)(2)(B)-(C) and (D).

Powell contends that his liberty interest, created by statute, has been violated by the Respondents systematic segregation and denial of access to programs and benefits afforded other similarly situated federal inmates, and that he has and continues to suffer grievous loss and the record clearly supports his contentions.

**ISSUE III:**   Whether the Respondents' actions have led to denial of due process?

**ARGUMENT:**

The heart at the matter herein is the classification and definition of Powell's status in the prison system and whether that determination led to violations of due process, civil and constitutional rights.

The Bureau of Prisons has classified and designated Hussain as a "deportable alien – Public Safety Factor, ineligible for early release or treatment programs." According to BOP records, this is based on a "detainer" lodged by ICE shortly after Powell was sentenced and committed to federal custody.

BOP's Program Statement §571.10(7) states that **all inmates** committed to BOP custody are to participate in the Residential Release Program, except those who have a Public Safety Factor of "deportable alien". So exactly what is the definition of a "deportable alien"?

According to BOP Program Statement  5325.06 which refers to §571.10(6), the term "detainee" referes to a non-citizen (alien) prisoner who **has finished serving his sentence,** and is being held past his or her release date for immigration purposes.

A "deportable alien" is further defined as a person who has finished serving his term of confinement, has no pending action in his criminal case (there is a final judgment), has been seen by an Immigration Judge, been found to be removable from the United States, **and** has a signed removal order issued by the Judge. Powell does not meet any of these criteria and as such, cannot be defined as a "deportable alien" for classification purposes.

The only "legal basis" for such classification was the so-called "detainer" lodged by ICE and enforced by BOP. However, as per the Office of the US Attorney for the Western District of Texas, the detainer is only an action letter, "with no power or other authority". Balleza-Escamilla v. US, Case No:4-10-cv-104 (4/20/2011).

The Respondents further state that "a detainer request RCDC to notify ICE when petitioner is released after serving his federal criminal sentence. It does not lengthen his sentence. A detainer does not say that petitioner cannot participate in RDAP or be placed in a halfway house. **Those decisions are BOP's decisions, not ICE.**" Rodriguez v. US, Case No:4-11-cv-36 (6/29/2011)(p.10, n.5).

On one hand, we have the BOP stating that they are acting on the authority of the detainer lodged by ICE, and on the other we have ICE stating that there is no such detainer. What is true in all of this is that Powell has been deprived statutory benefits that affect the length and nature of his confinement.

Furthermore, the BOP's categorical exclusion from early release of inmates convicted of certain prior offenses has been struck down

by the Ninth Circuit, stating that the BOP rule encompassed in
28 C.F.R. 550.58(a)(1)(iv)(2000) is invalid because the BOP failed
to provide any rationale for the categoric exclusion generally,
and that the rationale provided was based on a mistake of law.
Crickton v. Thomas, 579 F.3d 978.

The Court went on to state that "the BOP's expressed belief
that it was acting in accordance with Congressional intent was
difficult to square with Congress' expressed intent to provide an
incentive to encourage maximium participation in the BOP's drug
treatment programs, and that the categorical exclusion did not
comply with the APA."

In spite of its failure to properly classify Powell, and the
fact that he is incorrectly designated as a deportable alien, the
BOP insists that he is ineligible for consideration to participate
in any treatment programs or the benefits derived from the statutes.
The Bureau may have discretion to determine what successful comple-
tion of the programs mean, but based on its own criteria and
regulations in 28 C.F.R. Subpoint F, §550.58 et seq, Powell  does
not fit any of the criteria that would exclude him from consider-
ation for early release.

Powell contends that the BOP's failure to afford him safe-
guards under its own regulations has resulted in the invalidation
of the ultimate administrative procedures. Alamo Express Inc. v.
US, 613 F.2d 96 (5th Cir. 1980).

BOP Program Statement 5331.01 addresses the criteria and procedures for early release pursuant to §3621(e) and Item 5(c) identifies all the categories of persons who are to be deemed ineligible for early release. §550.58 further defines the categories of inmates who are to be held ineligible and Powell does not meet any of the definitions specified therein.

Powell contends that an inmate's classification determines where is to to be **best situated** in the prison system and should **never** inflict punishment. On the contrary, even the imposition of stricter classification is intended to be in the best interest of the inmate. Powell submits that the incorrect classification by the BOP based on the now-determined non-existent detainer has led to denial of access to statutory benefits that affects the length and nature of his sentence.

Respondents have stated that Powell's status designation makes him ineligible for both early release and sentence reduction based on completion of rehabilitation programs. However, the two statutes are not inextricably joined and there is no legal basis for denial of one based on ineligibility for the other. Inmates have been eligible for halfway house **without** completion of the treatment programs and others have been released without qualifying for half-way house placement. (Second Chance Act refers to direct release).

Powell contends that the Respondents failed to comply with the mandatory statutory language and Congressional intent based on the plain language of the statutes in question, and in so doing,

16

have deprived him of certain benefits, leading to a longer than necessary sentence as compared to other similarly situated inmates.

"The BOP **shall assure** that a prisoner serving a term of imprisonment spends a portion of the last ten percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to prepare and adjust for re-entry into the community." §231 **requires** that the Attorney General and the Director of the BOP establish a **comprehensive** re-entry program.

The BOP has outsourced housing, security, medical care, and food service for federal inmates to private facilities for many years and as such have no reason to justify their failure to comply with Congress' intent to provide **all federal inmates** with the same benefits. The programs and halfway house could be located in areas or places that would negate the "flight-risk" quoted by the BOP.

Powell submits that the BOP has been authorized by Congress to shorten by up to one year, the term of a prisoner who success-fully completes a treatment program and to ensure placement in a halfway house for up to one year, based on criteria to be established and **uniformly applied!** H.R. Rep. 103-320, 103 Cong., 1st Sess. (1993).

The BOP cites a report from the American Psychiatric Association and states that placement in a halfway house is necessary for the completion of the treatment program and that no credit can be given until such is completed. Once again, the BOP is co-joining the two statutes and denying placement in a halfway house by making it contingent on completion of a treatment program.

However, according to BOP policy, the treatment program which lasts 6-9 months, cannot begin until an inmate has less than 30 months remaining to serve. The inmate by statute, cannot be placed in a halfway house unless he has less than one year left to serve, so if he must then complete another phase of treatment **before** he receives the one year credit, then the statutes are self-defeating!

Unless Respondents are suggesting that members of Congress are mathematical delinquents (something suspected but never before proved), then it is reasonable to assume that any credit for completion of a treatment program must be given prior to placement in a halfway house and as such, completion of the third phase of treatment, as defined by the APA, cannot be mandatory before an inmate is eligible for the reduction.

Powell submits that the very language of the regulation supports his contention. 28 C.F.R. §550.53(a) states in part "that inmates who have successfully completed the unit-based program, **and (when appropriate),** the follow-up treatment, **and** are transferred to community confinement, must successfully complete the community-based abuse treatment."

The plain language of the statute does not negate credit for completion of the unit-based program if the inmate does not need follow-up treatment and is not placed in a halfway house. As long as an inmate completes the unit-based program, he can receive the one year reduction and vice versa, he can be placed in a halfway house **without** completion of a treatment program.

The Warden, according to BOP policy, may find an inmate to be ineligible for participation in a community-based program but there is no evidence that such finding disqualifies the inmate from the one year reduction for completion of the unit-based program. In fact, the Second Chance Act (2007) refers to direct release inmates scheduled for release and who will not be placed in a halfway house or pre-release custody.

Powell contends that Respondents either conspired to, or have erred in their determination of his status, deprived him of access to treatment and benefits intended by Congress, and in so doing, have effectively lengthened his term of confinement.

The Supreme Court's ruling in Pepper v. US, 99-6822 (March 2011) supports this contention stating that "by preventing an inmate from **the opportunity** to complete post-sentence rehabilitation, the BOP, prison authorities, and the government are depriving the inmate from the potential consideration of reduction in sentence as authorized by §3661 and §3553(a)(2)(B)-C) and (D).

The Court has also held that any collateral consequences to a sentence that creates conditions of confinement or extends the length of a sentence when compared to other similarly situated federal inmates is a violation.

Powell contends that the BOP cannot edit a statute or may not promulgate categorical rules made significant by Congress and exclude a category of aliens who are otherwise eligible for benefits. Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005).

In <u>Levine v. Apker</u>, 455 F.3d 71, the Second Circuit stated that "like our sister courts, we find that §570.21 is an improper exercise of BOP rulemaking, and by sorting prisoners eligibility according to only one factor on the applicable list of conditions, the BOP had unlawfully excised parameters from the statute."

Powell  submits that the detainer exclusion was not codified in the CFR's, even though it was subjected to public notice and scrutiny as required for the APA, and that the agency did not provide a satisfactory explanation for its actions that was legal.

Failure to state a rationale for the categorical exclusion of certain aliens, such as Powell,  based on only one factor, renders such regulation abritrary and capricious in violation of §706(2) (A), or an abuse of discretion, or otherwise not in accordance with the law.

All applicable BOP policy statements addressing eligibility for early release or qualification for reduction in term of confinement has language that takes into consideration an inmate's **past or current** history only. There is no language, statutory or otherwise, that allows the BOP to consider a future, untried, and **civil** proceeding, to determine a prisoner's eligibility!

The United States Constitution states that a person is to be considered innocent **until proven guilty** but it is clear from the facts herein that Respondents  have foresworn the constitution in that they have presumed guilt and acted in a manner that deprives Powell of life and liberty, a clear violation of due process.

20

According to Respondents , "rehabilitation is premature, if not futile" and thus it is okay for them to deny Powell access to treatment and benefits afforded other similarly situated federal inmates, even though the law and the Courts have determined otherwise. To justify their actions, the BOP refers to the detainer lodged by ICE.

When the United States signed the IADA compact on behalf of itself, Puerto Rico, and the District of Colombia, and it was ratified by Congress, it accepted the fact that the IADA was designed to prevent **any interference** with a prisoner's participation in treatment or rehabilitation programs. IADA §2, Art. 1; US v. Mauro, 436 U.S. 340, 98 S.Ct. 1834; Cuyler v. Adams, 449 U.S. 433, 101 S.Ct. 703.

Powell  submits that Congress and the Sentencing Commission and virtually all Supreme and Circuit Court rulings have held that rehabilitation is a major or primary goal of incarceration, and in denying him access to such rehabilitation and benefits arising therefrom, Respondents,  by incorrectly assigning him a status of "deportable alien", have and continue to violate his civil and constitutional rights and due process of law.

Especially since Respondents  have now confirmed that the "detainer" is really not a detainer and that BOP is responsible for the denial of benefits **without authority!**

ISSUE IV:   What are the remedies that flow from a §2241 petition?

ARGUMENT:

This Court has at various times stated that it lacked jurisdiction in matters such as these pursuant to §2241 because the relief sought did not provide "immediate release". The Fifth Circuit has held that a requisite for §2241 relief is that there be "accelerated release" for the petitioner.

According to Black's Law Dictionary, "accelerate" means to advance the due date of a specified event, and "immediate" means occurring without delay. Powell seeks to  accelerate his release from custody by a favorable judgment by this Court that allows him to receive credit for the benefits afforded to him by his status as a federal inmate and/or a national of the United States.

The Fifth Circuit has established a simple bright-line rule for the resolution of such questions. If a favorable decision would not entitle the prisoner to **accelerated release**, then the proper vehicle to bring suit is pursuant to §1983.

Powell contends that the relief he is seeking would change the due date of his release from incarceration, and as such, this suit is properly brought pursuant to § 2241. Carson, 112 F.3d 820. Habeas corpus relief is available if the prisoner is challenging the fact or duration of his sentence, and the resolution of the factual and legal allegations would entitle him to relief. Cook, 37 F.3d 168.

## CONCLUSION

When a person is sentenced under the federal laws of the United States, it is expected that all the laws apply and it is absolutely clear that there is no language in any of the statutes that differentiate between a citizen and non-citizen federal prisoner.

As a result, there is a reasonable expectation by any federal inmate that the benefits enacted by law would correspond to the punishments enacted by the same system. Powell  is not a deportable alien or INS detainee by definition and as such, any long-term detainer that interferes with his treatment and rehabilitation is clearly illegal and a violation of his civil and constitutional rights and due process of law.

Selective enforcement and application of the law and its corresponding benefits and punishment when applied to the prison population as a whole, and leading to segregation and deprivation of federal benefits to similarly situated prisoners is illegal.

The United States is a party to the compact agreement on Inter-State Detainers that was enacted to prevent denial of access to rehabilitative and treatment programs. There is no doubt that the Respondents have placed a detainer that has interfered with Powell's access to these benefits.

Apart from seeking a removal of the detainer, which Powell has done, there is no other available administrative procedure in place that would impact the violation since the prison itself was

not the party responsible for the violation.

If the "detainer" is valid, then the party responsible for lodging the detainer has 180 days to act or the Court must dismiss it with prejudice. However, if it is not valid, as has been stated by the US Attorney's Office for the Western District of Texas, then the BOP and the prison has acted without authority to deny Powell federal benefits enacted by Congress and designed to apply to all federal inmates.

§2241 states in part that a decision in Petitioner's favor must entitle him to "accelerated" release not "immediate" release as stated by the Respondents and Powell  submits that access to the programs currently denied to him would reduce his sentence by at least one year and placement in halfway house for up to twelve months.

This constitues accelerated release by any standard that this Honorable Court elects to apply!

Since time is of the essence in that Powell  has less than 15 months remaining to serve, he asks for a rapid review of this case and seeks the removal of the "detainer" if it is indeed such, and an ORDER directing the Respondents to make available the federal benefits that would lead to the reduction of his term of confine- ment. He further seeks such benefits be applied immediately based on the fact that due to Respondents violation of his rights, they created the delay that caused him lengthened incarceration and led to undue and cruel punishment.

Powell seeks release from custody on an immediate or accelerated basis since he has been grievously harmed by the Respondents' actions, and that continued incarceration would deny him benefits intended by Congress and based on his status as a national of the United States and a federal inmate.

He asks that this Court act in as prompt a manner as possible and seeks to proceed in forma pauperis with regards to this case since he has no ability to pay the costs associated with this action.

Should the Court deny his request to proceed in forma pauperis, he asks for rapid notification so that he may consider alternative means to comply with the Court's instructions.

Submitted on this 15th day of July, 2011.

Richard Wayne Powell

C.I. Reeves III

P.O. Box 2038

Pecos, TX 79772

57647-066

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was mailed to the Clerk of the Court, US District Court, Western District of Texas, 410 S. Cedar Street, Pecos, TX 79772, via first-class US mail, postage prepaid, on this 15th day of July, 2011.


*Richard Powell*

Richard Wayne Powell

C.I. Reeves III

P.O. Box 2038

Pecos, TX 79772

57647-066

## EXHIBIT A

G0002        MORE PAGES TO FOLLOW . . .

```
  RVSB3  540*23 *          SENTENCE MONITORING         *     07-05-2011
PAGE 004 OF 004 *           COMPUTATION DATA           *     11:10:01
                            AS OF 07-05-2011

REGNO..: 57647-066 NAME: POWELL, RICHARD WAYNE

----------------------------- CURRENT DETAINERS: -----------------------------
```

```
DETAINER NO..: 001
DATE LODGED..: 07-07-2005
AGENCY.......: IMMIGRATION & NATURALIZATION
AUTHORITY....: U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
CHARGES......: POSSIBLE DEPORTATION
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

US POSTAGE PITNEY BOWES

ZIP 79772 $ 002.22
02 1W
0001365726 JUL 19 2011

Richard Wayne Powell

RCDC III

P.O. Box 2038

Pecos, TX 79772

79147-066

Clerk of the Court

US District Court

Western District of Texas

410 S-Cedar Street

Pecos TX 79772